JENNIE L. SMITH, Appellant, v. ALSON SECOR et al., Appellees.
LORAINE LAVANI, Appellant, v. JENNIE L. SMITH, Appellee.

No. 44322

AUGUST 5, 1938

REHEARING DENIED NOVEMBER 25, 1938.

Loretta Vrooman and Reed & Elick (Vernon A. Vrooman, of counsel), for appellant Jennie L. Smith.

Stipp, Perry, Bannister & Starzinger, for appellee Alson Secor and appellant Loraine LaVani.

KINTZINGER, J.—In 1933, the defendants Loraine LaVani and Alson Secor were both interested in the production of hemp. Secor had told Mrs. LaVani for sometime what he knew about the production of hemp fibre and that he had a machine for processing such fibre. At that time Mrs. LaVani was only interested in promoting hemp in Nebraska, but in January 1934, she became interested in hemp growing in Iowa. She testified that the defendant Secor then had a contract for the Iowa rights from the World Fibre Corporation of Chicago and that she and Secor then decided to join forces, which they had done at the time she and Secor had negotiations with plaintiff in January 1934, about the formation of a hemp production corporation in Iowa. Mrs. Smith, the plaintiff, and her sister Mrs. Koenig were so advised by defendants in January 1934.

The evidence shows without dispute that, in January 1934, the parties hereto had negotiations for the organization of a corporation to further the promotion of hemp in Iowa and Nebraska. As a result of these negotiations, Mrs. Smith paid Mrs. LaVani and Mr. Secor $1,500 for capital stock in a corporation to be organized by them in Iowa for the production of hemp. Mr. Secor testified that in 1933 he and Mrs. LaVani determined to form a corporation for the promotion of the production of hemp in Iowa. The name of the corporation was to be the "Iowa Hemp & Fibre Corporation." The testimony shows without dispute that both the defendants, Mrs. LaVani and Alson Secor, were promoting the organization of an Iowa corporation for such purpose.

The testimony also shows that in January 1934, before paying any money to defendants for the purchase of stock in the proposed Iowa corporation, Mrs. LaVani had the contract rights for the production of hemp in Nebraska. The evidence also shows that at that time Mrs. Smith, the plaintiff, was given to understand by them that Mrs. LaVani had a contract

for the Nebraska rights and that Mr. Secor had one for the Iowa rights from the World Fibre Corporation of Chicago.

Upon this question Mrs. LaVani testified that, before January 1934, she was only interested in promoting Nebraska and that she became interested in growing hemp in Iowa in January 1934, at which time Mr. Secor had the Iowa contract, and that ''he and I decided to join forces, and that had been done at the time conferences were had with Mrs. Smith about the hemp project'' in Iowa.

The testimony on the part of plaintiff shows without dispute that the $1,500 invested by Mrs. Smith, the plaintiff, was paid to Mrs. LaVani and Mr. Secor, and they both admit having received the money from Mrs. Smith.

Mrs. LaVani testified that the $1,500 invested by Mrs. Smith was given to her and that she took it to the World Fibre Corporation of Chicago and paid it to them for the contract giving Secor the Iowa rights to operate the hemp processing machine.

Mr. Secor says that he held the contract for the Iowa rights and that the cost of such rights was his personal obligation to the World Fibre Corporation of Chicago. He also testified that when it came to buying the contract for Iowa he did not put his own money into it, but as a matter of fact put Mrs. Smith's $1,500 into it. He also admitted that when he took Mrs. Smith's money he did not have a contract with the World Fibre Corporation of Chicago, but that the contract was in the making and was signed on January 12, 1934.

Plaintiff also testified that Mr. Secor had her endorse a $1,000 cashier's check to him, and that she purchased the check from the Iowa-Des Moines National Bank and paid $1,000 therefor. Referring to this check she says: ''That is the same check I turned over to Mr. Secor.'' The record shows without dispute that Mrs. LaVani and Mr. Secor went to Chicago and that Mrs. LaVani took Mrs. Smith's money with her and paid it on the Secor contract.

Secor testified that at the time of the negotiations with Mrs. Smith he heard Mrs. LaVani tell Mrs. Smith that he had the Iowa contract and that she had the Nebraska contract, but he admits that at the time he took Mrs. Smith's money he did not have the Iowa contract.

As further evidence that Mrs. Smith paid her money

to both Secor and Mrs. LaVani, the following receipt from them was introduced in evidence:

Exhibit 2.

"Received of Jennie L. Smith the sum of

| | | |
|---|---|---|
| Banker's Check 137096 | | $1,000.00 |
| Cash | | 500.00 |
| | Total | $1,500.00 |

in payment of agreement attached for shares in the Iowa Hemp & Fibre Corporation.

"[Signed]  Loraine LaVani,
"[Signed]  Alson Secor

January 12, 1934."

The following is the agreement for the subscription for said stock:

"Des Moines, Iowa,
"January 1, 1934.

"It is hereby agreed that the sum of $1,500.00 (fifteen hundred dollars) paid to us the 4th day of January, 1934, is to be in payment for a like sum of stock in the Iowa Hemp and Fibre Corporation when the same is incorporated.

"[Signed] Alson Secor,
"Loraine LaVani,
"Jennie L. Smith,
"Hazel Koenig.

"Witnesses to these signatures:
"James T. Armstrong
"Justice A. Benson."

The lower court sustained a motion for a directed verdict against Mrs. LaVani in favor of plaintiff for money had and received, but overruled plaintiff's motion for a directed verdict against Mr. Secor upon the ground that plaintiff's money was received by Mrs. LaVani alone, and on that ground the court sustained Secor's motion for a directed verdict in his favor. Plaintiff appeals from the adverse ruling against her, and defendant LaVani appeals from the adverse ruling against her.

I. Mrs. Smith in her appeal contends that the evidence shows without dispute that both Secor and Mrs. LaVani received the money paid in by plaintiff. If the court's ruling on plain-

tiff's motion as against Mrs. LaVani was correct, he should also have sustained her motion against the defendant Secor, because the evidence shows without dispute that both the defendants received the money.

█ As the Iowa contract was given to defendant Secor by the Chicago corporation, and as the money therefor was received from Mrs. Smith, and as both Mr. Secor and Mrs. LaVani induced plaintiff to pay her money to them for capital stock in a corporation to be organized by them in Iowa, it necessarily follows that the money invested by the plaintiff was paid to both Mrs. LaVani and Mr. Secor.

█ It is the general rule of law that where one advances money to several persons in furtherance of an engagement in which they represent themselves to be jointly interested, they may be sued jointly, notwithstanding one of them asserts that he was not in fact so interested, because he is estopped from denying his interest. This conclusion is supported by the following authorities: 41 C. J. 62, section 65; Johnson v. Leffingwell, 74 Iowa 114, 37 N. W. 10; Speck v. Hettinger, 4 A. 168, 2 Sad. 474.

In the latter case it was held that money paid to two persons on their joint receipt may be recovered from them by a person entitled thereto in an action against them jointly, although as between themselves their interest may have been separate.

In the instant case the defendant Secor made no denial that the money was received by him and paid out for his use; on the contrary, he admits having received the money and that it was paid to the Chicago fibre corporation for and on his behalf.

It can hardly be said from the record in this case that the money received from the plaintiff was not used for and on behalf of the defendant Secor, or that he was not liable therefor, inasmuch as he admitted receiving the money and that it was paid upon his personal obligation.

There was no question under the evidence about Secor's having received the money, and his motion for a directed verdict in his favor should therefore have been overruled, unless a recovery is foreclosed on some other ground.

█ II. As a separate defense the defendants in their answer allege that the agreement relied upon by plaintiff that

an Iowa corporation be organized was superseded by an "agreement of partnership" under which plaintiff, Mrs. Smith, is estopped from relying upon the original plan to form a corporation. They therefore allege that the court erred in sustaining plaintiff's motion for a directed verdict against Mrs. LaVani, because plaintiff agreed to abandon the corporation form of organization by entering into a written agreement of copartnership.

After the defendants received plaintiff's $1,500, they used it for the purpose of securing a contract for the Iowa rights in a certain processing machine from the World Fibre Corporation of Chicago. After securing this contract the defendant's made several efforts to organize an Iowa corporation. They met considerable resistance, however, from the securities department of the state of Iowa and were finally refused permission to organize a corporation for the promotion of hemp processing in the state of Iowa.

The defendants contend that it was through no fault of theirs that they were unable to organize an Iowa corporation, but that their failure so to do was caused by the refusal of the securities department of the state of Iowa to permit such organization in this state. The reasons for defendants' inability to incorporate in this state are immaterial for the purposes of this case. The fact remains that they were not able to organize a corporation in this state and were therefore unable to deliver to the plaintiff any capital stock in an Iowa corporation as agreed upon. Whether the reasons for such refusal were sound or unsound does not alter the fact that defendants failed to organize an Iowa corporation and to deliver $1,500 worth of capital stock therein to plaintiff as agreed upon by them.

After defendants learned that no such corporation could be organized in Iowa, the parties entered into the following "Partnership Agreement:"

"Whereas, Alson Secor, of Des Moines, Iowa, holds a contract for the exclusive right to use and operate in the State of Iowa the machines covered by Letters Patent Nos. * * * of United States Patent Office and known as a Decorticating Machine, invented by John N. Selvig, of Chicago, Illinois, and

"Whereas, the said Alson Secor has granted and conveyed

the right to operate said machines in the State of Iowa for the year 1934 in connection with not to exceed six thousand acres of hemp acreage to the Iowa Hemp and Fibre Company, a copartnership;

"It is, therefore, agreed that the parties hereto have associated themselves together and do execute these articles of copartnership to witness their agreement, to-wit:

"That any and all profits and any and all expenses or losses in the operation of said business and/or handling of said Decorticating Machines or the products thereof, shall be divided and shared in the following proportions, to-wit:

| | |
|---|---|
| "To Alson Secor | 49% |
| "To Loraine LaVani | 49% |
| "To Jennie L. Smith | 1.7% |
| "To Candace Armstrong | .3 of 1% |

"In witness whereof, the parties hereto subscribe their hands this 14th day of March, 1934.

> "Alson Secor
> "Loraine LaVani
> "Jennie L. Smith
> "Candace Armstrong."

This "Partnership Agreement" contains all the terms of the partnership contract entered into between the parties.

By the terms of this agreement Mr. Secor and Mrs. LaVani were each to receive 49% of the profits earned by the partnership, and likewise were each to bear 49% of "all expenses or losses" therein. We find nothing in this agreement, or in the record, of any agreement or understanding by the terms of which Jennie L. Smith agreed to surrender or waive her rights in the $1,500 paid to defendants, nor is there any evidence tending to show that she transferred her rights therein to the defendants or to the copartnership.

Mrs. Smith testified in no uncertain terms that she was putting her money into the corporation and not into anything else and says, "I said if * * * my money was to be used for the corporation I would sign it. I would put the money into it, but nothing else. That is what they agreed to do."

The testimony in this case tends to show that the money paid over by Jennie L. Smith was paid solely and only for capital stock in the proposed Iowa Hemp & Fibre Corporation.

We can see nothing in the evidence in this case, or in the co-partnership agreement relieving the defendants from the obligation incurred by them in their agreement to deliver $1,500 worth of capital stock in a hemp fibre corporation to be organized in the state of Iowa.

The only evidence under which the defendants suggest that Mrs. Smith waived her right to recover the $1,500 is the following statement made by the attorney who drew up the partnership agreement: "Mrs. Smith raised no objection whatever about the substitution of a partnership form of organization for the corporate form of organization formerly contemplated." This, however, has no probative value whatever. It is simply a conclusion formulated in the mind of the witness with no foundation to back it up.

Mrs. Smith said nothing about waiving her rights to recover $1,500, nor did the defendants or their attorney, at the time the partnership agreement was drawn, say that the partnership was to be a substitution for the corporation form of organization. Nothing whatever was said in relation to that matter. The parties simply entered into a copartnership agreement and the terms thereof are clearly expressed in the agreement itself, which contains nothing about any waiver of plaintiff's rights to recover the $1,500. There is not a word in the testimony showing that any of the parties at or before the time of the partnership agreement was entered into said anything about Mrs. Smith waiving her rights in defendants' agreement to give her $1,500 of capital stock in an Iowa corporation. The fact that they all signed the copartnership agreement simply amounts to a consent to be bound by the terms of that agreement and nothing more.

As between themselves at least, the full measure of the rights and liabilities of the parties to the copartnership agreement are fixed by the terms thereof. Under its express terms, Jennie L. Smith was entitled to only 1.7% of all profits made by the copartnership, and likewise was liable thereunder for only 1.7% of "*all expenses or losses incurred in the operation of said business or handling of the decorticating machines or the products thereof.*"

Likewise under the terms of the partnership agreement the defendants Secor and LaVani were each entitled to 49% of the profits earned in said business, but were also liable for 49% of

"any and all expenses or losses in the operation of said business" under the partnership agreement.

The rights and liabilities of each of the parties in the copartnership were fully expressed in the partnership agreement. It is clear and unambiguous, and nothing contained therein indicates in any manner any agreement that defendants' agreement to form a corporation was substituted for or superseded by the partnership agreement.

The pleadings in this case fail to allege, and the evidence fails to establish, any counterclaim as an offset against plaintiff for any expenses or losses incurred by the copartnership, or by the defendants, in the operation of said copartnership business. Nor does the record show the amount, if any, of any losses sustained by said copartnership. As no offset is alleged by way of counterclaim, and as there is no evidence tending to establish any counterclaim, we are at a loss to understand how or why the defendants LaVani and Secor should be relieved from their obligation to reimburse the plaintiff for the $1,500 had and received by them under their corporation agreement. The evidence shows without dispute that no such corporation has been, or is expected to be, organized in the state of Iowa by the defendants. They are therefore liable to the plaintiff for the money had and received by them under the corporation agreement which they have failed to consummate.

The testimony in the record tends to show that practically all of the money delivered to Mrs. LaVani and Mr. Secor was used by them in purchasing the patent rights in Iowa for the production of hemp fibre in Iowa. It is hardly credible to believe that Jennie L. Smith would have paid for practically the entire rights of this business in Iowa and also agreed to give defendants 98% of all the profits made by the copartnership. It is likewise incredible to believe that she would pay for practically the entire amount of the chief asset of the copartnership and then agree to receive only 1.7% of its profits. It is our conclusion that defendants have failed to establish any defense relieving them from their obligation to repay plaintiff the $1,500 received by them for capital stock in an Iowa hemp fibre corporation.

For the reasons hereinabove expressed, we are constrained to hold that no defense against plaintiff's claim has been established.

Other reasons are alleged by an amendment to plaintiff's brief and argument as reasons for reversing the lower court's ruling on Secor's motion for a directed verdict. A motion to strike this amendment was filed, but in view of our ruling upon the errors alleged in plaintiff's original brief and argument, a consideration of this motion or the additional errors therein set out is deemed unnecessary.

We are constrained to hold that the lower court was right in entering judgment in favor of Jennie L. Smith against the defendant Loraine LaVani but was wrong in overruling plaintiff's motion for a directed verdict against the defendant Alson Secor.

The judgment of the lower court against Mrs. LaVani is therefore affirmed, and the judgment in favor of Secor is reversed, with instructions to set aside the judgment and enter a judgment in favor of plaintiff on her motion for a directed verdict against Secor.—Affirmed in part; reversed in part with instructions.

SAGER, C. J., and ANDERSON, DONEGAN, STIGER, and RICHARDS, JJ., concur.